1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MATTHEW PENA,**<br><br>                              Petitioner,<br><br>          **v.**<br><br>**KATHLEEN ALLISON, Warden,**<br><br>                              Respondent. | **Case No. 1:11-cv-00467 MJS (HC)**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**<br><br>**(Doc. 14)** |

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by William K. Kim of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 5, 11.)

**I.      PROCEDURAL BACKGROUND**

        Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on July 17, 2009, of petty theft with a prior theft related conviction and second degree burglary. (Clerk's Tr. at 264-65.) The trial court also found true that Petitioner had three prior strike convictions under the California three strikes law and sentenced Petitioner to serve an indeterminate term of twenty-five (25)

1

1  years to life in state prison. (Id.)

2      Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

3  District, which was denied on July 1, 2010. (Lodged Doc. 1.) Petitioner filed a petition for

4  review with the California Supreme Court, which was summarily denied on December

5  15, 2010. (Lodged Doc. 2.)

6      Petitioner filed the instant federal habeas petition on March 21, 2011. (Pet., ECF

7  No. 1.) In his petition, Petitioner alleges that there was not a factual basis for the plea

8  and that his sentence amounted to cruel and unusual punishment. (See generally, Pet.)

9      Respondent filed an answer to the petition on November 15, 2011. (Answer, ECF

10  No. 14.) Petitioner did not file a traverse.  The matter stands ready for adjudication.

11  **II.    STATEMENT OF THE FACTS[1]**

12      Inside a Target store in Modesto on May 31, 2008, at 7:00 p.m.,
    [Petitioner] walked rapidly toward the small electronics section. There
13   appellant selected a Sony MP3 Player, priced at $ 149.99, and used a
    cutting tool to remove the player from the secured display hook.
14   [Petitioner] concealed the player in his pants and walked past the cash
    registers and out of the store without paying for the item. [Petitioner] got
15   into a waiting vehicle.

16  People v. Pena, 2010 Cal. App. Unpub. LEXIS 7863 (Cal. App. Oct. 1, 2010).

17  **III.   DISCUSSION**

18      **A.    Jurisdiction**

19      Relief by way of a petition for writ of habeas corpus extends to a person in

20  custody pursuant to the judgment of a state court if the custody is in violation of the

21  Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

22  2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

23  suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

24  conviction challenged arises out of the Stanislaus County Superior Court, which is

25  located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a).  Accordingly,

26

27  [1] The Fifth District Court of Appeal's summary of the facts in its October 1, 2010 opinion is presumed
    correct.  28 U.S.C. § 2254(e)(1).

28

1    the Court has jurisdiction over the action.

2    **B.    Legal Standard of Review**

3    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

4    Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

5    filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

6    114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

7    the AEDPA; thus, it is governed by its provisions.

8    Under AEDPA, an application for a writ of habeas corpus by a person in custody

9    under a judgment of a state court may be granted only for violations of the Constitution

10   or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

11   7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

12   state court proceedings if the state court's adjudication of the claim:

13   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established federal law, as
14   determined by the Supreme Court of the United States; or

15   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the State
16   court proceeding.

17   28 U.S.C. § 2254(d).

18   1.    Contrary to or an Unreasonable Application of Federal Law

19   A state court decision is "contrary to" federal law if it "applies a rule that

20   contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

21   that are materially indistinguishable from" a Supreme Court case, yet reaches a different

22   result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

23   "AEDPA does not require state and federal courts to wait for some nearly identical

24   factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

25   even a general standard may be applied in an unreasonable manner" Panetti v.

26   Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

27   "clearly established Federal law" requirement "does not demand more than a 'principle'

28   or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

3

1   decision to be an unreasonable application of clearly established federal law under §

2   2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

3   (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

4   71 (2003).  A state court decision will involve an "unreasonable application of" federal

5   law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

6   409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

7   Court further stresses that "an *unreasonable* application of federal law is different from

8   an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529

9   U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

10  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

11  correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

12  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

13  have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

14  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

15  Federal law for a state court to decline to apply a specific legal rule that has not been

16  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

17  (2009), quoted by Richter, 131 S. Ct. at 786.

18              2.    Review of State Decisions

19       "Where there has been one reasoned state judgment rejecting a federal claim,

20  later unexplained orders upholding that judgment or rejecting the claim rest on the same

21  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

22  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

23  (9th Cir. 2006). Determining whether a state court's decision resulted from an

24  unreasonable legal or factual conclusion, "does not require that there be an opinion from

25  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

26  "Where a state court's decision is unaccompanied by an explanation, the habeas

27  petitioner's burden still must be met by showing there was no reasonable basis for the

28  state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

4

1   not require a state court to give reasons before its decision can be deemed to have been
2   'adjudicated on the merits.'").

3        <u>Richter</u> instructs that whether the state court decision is reasoned and explained,
4   or merely a summary denial, the approach to evaluating unreasonableness under §
5   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments
6   or theories supported or, as here, could have supported, the state court's decision; then
7   it must ask whether it is possible fairminded jurists could disagree that those arguments
8   or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.
9   Thus, "even a strong case for relief does not mean the state court's contrary conclusion
10  was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).  AEDPA "preserves
11  authority to issue the writ in cases where there is no possibility fairminded jurists could
12  disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>  To put
13  it yet another way:

14       As a condition for obtaining habeas corpus relief from a federal
     court, a state prisoner must show that the state court's ruling on the claim
15       being presented in federal court was so lacking in justification that there
     was an error well understood and comprehended in existing law beyond
16       any possibility for fairminded disagreement.

17  <u>Id.</u> at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts
18  are the principal forum for asserting constitutional challenges to state convictions." <u>Id.</u> at
19  787. It follows from this consideration that § 2254(d) "complements the exhaustion
20  requirement and the doctrine of procedural bar to ensure that state proceedings are the
21  central process, not just a preliminary step for later federal habeas proceedings." <u>Id.</u>
22  (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977).

23            3.    <u>Prejudicial Impact of Constitutional Error</u>

24       The prejudicial impact of any constitutional error is assessed by asking whether
25  the error had "a substantial and injurious effect or influence in determining the jury's
26  verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551
27  U.S. 112, 121-22 (2007) (holding that the <u>Brecht</u> standard applies whether or not the
28  state court recognized the error and reviewed it for harmlessness).  Some constitutional

1    errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

2    Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

3    (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

4    assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

5    Strickland prejudice standard is applied and courts do not engage in a separate analysis

6    applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

7    v. Lamarque, 555 F.3d at 834.

8    **IV.    REVIEW OF PETITION**

9        **A.    Claim One: Petitioner's Plea was Invalid**

10       As his first ground for relief, Petitioner contends that his bargained-for plea is

11   invalid because there was no sufficient factual basis to support it. (Pet. at 5-19.)

12   Specifically, he asserts that there was no factual basis to support the finding that he had

13   two prior strike convictions under California's Three Strikes Law. (Id.)

14               1.    State Court Decision

15       Petitioner presented this claim on appeal to the Fifth District Court of Appeal. The

16   claim was denied in a reasoned decision by the Fifth District Court of Appeal and

17   summarily denied by the California Supreme Court. (See Lodged Docs. 1-2.) Because

18   the California Supreme Court's opinion is summary in nature, this Court "looks through"

19   that decision and presumes it adopted the reasoning of the California Court of Appeal,

20   the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501

21   U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through"

22   presumption that higher court agrees with lower court's reasoning where former affirms

23   latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir.

24   2000) (holding federal courts look to last reasoned state court opinion in determining

25   whether state court's rejection of petitioner's claims was contrary to or an unreasonable

26   application of federal law under 28 U.S.C. § 2254(d)(1)).

27       In denying Petitioner's claim, the appellate court explained:

28       **1. Did the trial court abuse its discretion when it denied appellant's**

                                                   6

motion to strike two of his three prior strike convictions on grounds that the court did not adequately inquire into the factual basis for the pleas?

The information alleged that [Petitioner] had three prior strike convictions: a June 1983 conviction for attempted robbery (§§ 664, 211); a May 1995 conviction for robbery (§ 211); and a January 2003 conviction for attempted robbery (§§ 664, 211). Prior to trial, [Petitioner] moved to strike the 1983 and 2003 attempted robbery conviction allegations, claiming that the record in those cases lacked an adequate factual basis for the pleas in violation of section 1192.5. [Petitioner]'s motion included the reporter's transcripts for both the 1983 plea hearing and 2003 change of plea hearing. Respondent filed a motion in opposition and provided a copy of several documents for the 2003 conviction. The trial court reviewed the provided case records for both pleas, heard the parties' arguments, and then denied the motion on its merits.

[Petitioner] contends that the trial court abused its discretion when it denied his motion to strike the prior convictions. Respondent contends [Petitioner]'s assertion that the factual basis of both pleas was deficient constitutes an impermissible collateral attack on the validity of his 1983 and 2003 convictions.

While it is true that, when sentencing a defendant, a trial court may not rely on a prior felony conviction obtained in violation of the defendant's constitutional rights (People v. Allen (1999) 21 Cal.4th 424, 429), "[t]here is … no federal constitutional requirement that a court, whether federal or state, inquire into the factual basis for a plea." (People v. Hoffard (1995) 10 Cal.4th 1170, 1183; see also Ganyo v. Municipal Court (1978) 80 Cal.App.3d 522, 530.) Also, motions to strike prior convictions charged in a new prosecution, made in the trial court in connection with the new prosecution, **[footnote 2]** are limited to claims that the defendant was denied the assistance of counsel or was not given proper Boykin-Tahl **[footnote 3]** advisements in connection with a guilty plea. (People v. Allen, supra, at pp. 429, 442-443.)

**Footnote 2.** The origin for such motions lies in the opinion in People v. Sumstine (1984) 36 Cal.3d 909. They are commonly called motions to strike a prior conviction or Sumstine motions.

**Footnote 3.** Boykin v. Alabama (1969) 395 U.S. 238; In re Tahl (1969) 1 Cal.3d 122, 132 ["direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea"].

[Petitioner] acknowledges that the determination of whether there is a factual basis for a guilty plea is not required by the Constitution, but he relies on People v. Marlin (2004) 124 Cal.App.4th 559 for the proposition that lack of a factual basis is a statutory error that supports a collateral challenge to the validity of a plea. [Petitioner] quotes from Marlin, which states that the factual basis requirement, "[a]lthough not constitutionally required [citation],… furthers constitutional considerations attending a guilty plea [citation], protects against the entry of a guilty plea by an innocent defendant, and makes a record in the event of appellate or collateral attacks on that plea." (Id. at p. 571.) But Marlin involved a direct,

1  rather than collateral, attack on a plea, and is not applicable here. (Id. at p.
562.) Further, by using the term "collateral attack," the Marlin court may
2  have been referring to a vehicle other than a motion to strike. (See People
v. Villa (2009) 45 Cal.4th 1063, 1074 [discussing the petition for habeas
3  corpus as a vehicle for challenging the validity of an alleged prior
conviction]; People v. Allen, supra, 21 Cal.4th at p. 429 ["this court long
4  ago decided that the defendant was entitled to challenge such priors in a
petition for a writ of habeas corpus"].)

5  Because a claim that a plea in a prior conviction was not supported
by a factual basis is not cognizable by way of a motion to strike the
6  conviction, we need not and will not consider whether the trial court erred
in deciding that the records from [Petitioner]'s 1983 and 2003 attempted
7  robbery convictions demonstrated that the pleas were supported by an
adequate factual basis. The trial court did not err when it denied
8  [Petitioner]'s motion to strike.

9  People v. Pena, 2010 Cal. App. Unpub. LEXIS 7863, 2-6 (Cal. App. Oct. 1, 2010).

10                  2.      Lack of a Factual Basis

11       Petitioner contends that the factual basis for the plea was insufficient to support

12  his guilty plea. Petitioner has failed to establish that the state court's decision was

13  contrary to, or involved an unreasonable application of, federal law. As such, the Court

14  will recommend that Petitioner's claim be denied.

15       The Ninth Circuit recently addressed whether a claim that the plea lacked a

16  factual basis has been recognized under federal law. Loftis v. Almager, 704 F.3d 645,

17  647-648 (9th Cir. 2012). The Court concluded that it is not a federally cognizable claim:

18       It is axiomatic that habeas relief lies only for violations of the
Constitution, laws, or treaties of the United States; errors of state law will
19  not suffice. E.g., Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475,
116 L. Ed. 2d 385 (1991). Consequently, we must determine whether
20  [petitioner]'s factual basis claim raises a federal constitutional issue.

21       The Constitution requires that a plea be knowing, intelligent, and
voluntary. E.g., Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 23
22  L. Ed. 2d 274 (1969). The record must show that the defendant voluntarily
relinquished his privilege against self-incrimination, his right to trial by jury
23  and his right to confront his accusers, e.g., United States v. Escamilla-
Rojas, 640 F.3d 1055, 1062 (9th Cir. 2011), cert. denied, 133 S. Ct. 101,
24  184 L. Ed. 2d 47, 81 U.S.L.W. 3161 (U.S. 2012), and that he understood
the nature of the charges and the consequences of his plea, e.g., Tanner
25  v. McDaniel, 493 F.3d 1135, 1146-47 (9th Cir. 2007); Little v. Crawford,
449 F.3d 1075, 1080 (9th Cir. 2006).
26
27       Beyond these essentials, the Constitution "does not impose strict
requirements on the mechanics of plea proceedings." Escamilla-Rojas,
28  640 F.3d at 1062 (citing Brady v. United States, 397 U.S. 742, 747 n.4, 90
S. Ct. 1463, 25 L. Ed. 2d 747 (1970)). While Fed. R. Crim. P. 11 and its

state analogs require additional safeguards, violations of such rules do not ordinarily render a plea constitutionally infirm and thus vulnerable to collateral attack. See, e.g., United States v. Timmreck, 441 U.S. 780, 783-84, 99 S. Ct. 2085, 60 L. Ed. 2d 634 (1979); see also Estelle, 502 U.S. at 68 n.2.

Among the requirements imposed on trial judges by rule — but not the Constitution — is the finding of a factual basis. See, e.g., Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("Putting a factual basis for the plea on the record has become familiar as a result of statutes and rules, not as a result of constitutional compulsion."). Accordingly, habeas courts have held that, unless a plea is accompanied by protestations of innocence or other "special circumstances," the Constitution does not require state judges to find a factual basis. E.g., Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir. 1985); see also Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996) ("Put simply, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require an on-the-record development of the factual basis supporting a guilty plea before entry of the plea, and the failure of a state court to elicit a factual basis before accepting a guilty plea does not in itself provide a ground for habeas corpus relief under 28 U.S.C. § 2254."). Cf. Willett v. Georgia, 608 F.2d 538, 540 (5th Cir. 1979) (holding that under North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), "when a defendant pleads guilty while claiming his or her innocence, the court commits constitutional error in accepting the plea unless the plea is shown to have a factual basis").

[Petitioner] cannot obtain habeas relief because the state trial court's failure to find a factual basis for his no contest plea — unaccompanied by protestations of innocence — does not present a constitutional issue cognizable under 28 U.S.C. § 2254. See, e.g., Bonior v. Conerly, 416 Fed. App'x 475, 476 (6th Cir. 2010) (holding that a prisoner's claim that there was an insufficient factual basis to support his no contest plea to lesser charges was not cognizable in federal habeas corpus); Green v. Koerner, 312 Fed. App'x 105, 108 (10th Cir. 2009) (holding that a prisoner's claim that the state court lacked a factual basis to support a no contest plea did not, by itself, present a basis to invalidate her plea in a federal habeas corpus action); Foote v. Ward, 207 Fed. App'x 927, 930 (10th Cir. 2006) (holding that only if the defendant claims innocence does he obtain the added protection of Alford); Kirk v. Cline, No. 09-3187-WEB, 2011 U.S. Dist. LEXIS 132907, 2011 WL 5597362, at *8 (D. Kan. Nov. 17, 2011) (collecting cases and noting that the "due process clause does not require more of a factual basis or other more stringent standards for a no contest plea than a guilty plea"); see also Post v. Bradshaw, 621 F.3d 406, 426-27 (6th Cir. 2010) (noting that failure to find a factual basis for a no contest plea would be a violation only of state law, not cognizable in habeas), cert. denied, 131 S. Ct. 2902, 179 L. Ed. 2d 1249 (2011). It is therefore unnecessary to decide whether the state appellate court unreasonably determined that the record supplied an adequate factual basis for [petitioner]'s plea.

Loftis, 704 F.3d at 647-648.

Thus, Petitioner's claim that his rights were violated based on the allegedly

insufficient factual basis is not a valid Constitutional claim, because no right to a

9

sufficient factual basis exists under the United States Constitution. Petitioner is not entitled to relief and it is recommended that the claim is denied.

## B.   <u>Cruel and Unusual Punishment</u>

In his second claim, Petitioner argues that his 25 years to life sentence is grossly disproportionate to the crime of petty theft and violated the Eighth Amendment prohibition against cruel and unusual punishment. (Pet. at 20-31.)

### 1.   State Court Decision

The last reasoned decision denying Petitioner's claim was that of the Fifth District Court of Appeal. In denying Petitioner's claim, the appellate court explained:

> **2. Did the trial court abuse its discretion when it denied [Petitioner]'s request to strike two of his three prior strike convictions under section 1385?**
>
> At sentencing, [Petitioner] asked that the trial court dismiss two of his prior convictions under section 1385 and the United States and California Constitutions. In doing so, he noted the minor nature of the current offense, which he claimed was caused by drug use; the age of his prior strike convictions, which occurred 26, 14, and 7 years earlier; and the fact that, since his last strike offense in 2003, his criminal history "is not marked by violence" but instead reflects a drug problem. He further argued that application of the three strikes law in this case would violate the federal and state constitutional bans against cruel and unusual punishment.
>
> Respondent opposed the motion, arguing that [Petitioner]'s criminal history was long and serious, dating back 32 years. That history consists of a voluntary manslaughter conviction at the age of 16 in 1977 with a California Youth Authority commitment; misdemeanor convictions of auto theft and possession of a controlled substance in 1982; attempted robbery while armed with a gun in 1983 with a two-year prison term; robbery in New Mexico in 1986 with a nine-year prison term; felony possession of a controlled substance in 1992; robbery with use of a knife in 1995 with a four-year prison term; repeated parole violations through 2002; and attempted robbery in 2003. Respondent also pointed out that, with respect to [Petitioner]'s present offense, in which he was arrested carrying a razor blade, he was well aware of the consequences of his conduct as he initially denied involvement with the crime because he had "'three strikes'" and did not want another felony.
>
> The trial court denied [Petitioner]'s motion, stating it had considered:"… the personal background of [[Petitioner]] and whether he is an individual that falls within the scheme of Three Strikes looking not at the convictions but the periods of time in his adult--or actually going back to his teenage years and into his adult years, periods of time he's been incarcerated or periods of time that he's been a productive member of society …. [P] … [P] I recognize that this is a crime that's petty theft with

prior convictions, and I recognize the amount that was at stake, and that it was also--he was convicted of a crime of second degree burglary. And that offense by itself of the taking of something for a value of approximately a $ 150 in any other number of settings does not trigger a 25-year to life sentence. [P] And it was only when I went back over and read all of this a second time, … [P] … it occurred to me … what had happened previously on this last grant of probation. There's nobody here who's more aware of what the consequences of that most recent crime more than [Petitioner]. He was well aware that he was under the Three Strikes Law, and he's been aware, I think, for quite a long time. [P] And so those are the things that I took a look at, … And in evaluating all of the considerations which have to do with his criminal history, the facts of this crime, the law on the subject, I decline to use the discretion to strike any of the strikes."

[Petitioner] now contends that the trial court abused its discretion by refusing to strike two of his prior convictions under section 1385. We disagree.

Under section 1385, subdivision (a), a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." In People v. Superior Court (Romero) (1996) 13 Cal.4th 497, our Supreme Court held that a trial court may utilize section 1385, subdivision (a) to strike or vacate a prior strike conviction for purposes of sentencing under the three strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (Romero, supra, at p. 504.) Similarly, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (People v. Carmony (2004) 33 Cal.4th 367, 374 (Carmony).)

In Carmony, our Supreme Court explained:

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.]"' … Second, a '"decision will not be reversed merely because reasonable people might disagree…."' Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (Carmony, supra, 33 Cal.4th at pp. 376-377.)

The court went on to explain that "'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme."' [Citation.]" (Carmony, supra, 33 Cal.4th at p. 377.) The court then quoted People v. Williams (1998) 17 Cal.4th 148, 161 for the proper standard for reviewing a decision to strike a prior conviction "in furtherance of justice" pursuant to section 1385: "'[T]he court in

question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (<u>Carmony</u>, supra, at p. 377.)

The three strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (<u>Carmony</u>, supra, 33 Cal.4th at p. 378.) This presumption will only be rebutted in an "extraordinary case--where the relevant factors described in [<u>People v. ]Williams</u>, supra, 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ." (<u>Ibid.</u>)

In this case, we cannot find that the trial court abused its discretion by declining to strike the prior convictions. With respect to the nature and circumstances of the present offense, as the trial court explained, petty theft with a prior conviction and second degree burglary do not by themselves trigger a 25-year-to-life sentence. But the trial court also noted the significant amount of time [Petitioner] had been incarcerated and not "a productive member of society" over the past 30 years. And in addition, it appears that [Petitioner] was well aware of the consequences of his current actions, "that he was under the Three Strikes Law," and had been given a "break" on his last grant of probation. These considerations do not manifestly support the striking of [Petitioner]'s prior convictions such that no reasonable minds could differ, and we reject [Petitioner]'s contention to the contrary. (<u>Carmony</u>, supra, 33 Cal.4th at p. 378.)

## 3. Does [Petitioner]'s sentence constitute cruel and/or unusual punishment?

We also reject [Petitioner]'s claim that the 25-year-to-life sentence, as applied to him, was cruel and/or unusual punishment. Under the proscription of "cruel and unusual punishment" in the Eighth Amendment to the United States Constitution (applicable to the states via the Fourteenth Amendment), a "'narrow proportionality principle' … 'applies to noncapital sentences.'" (<u>Ewing v. California</u> (2003) 538 U.S. 11, 20 (<u>Ewing</u>), quoting <u>Harmelin v. Michigan</u> (1991) 501 U.S. 957, 996-997 (<u>Harmelin</u>).) This constitutional principle "'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (<u>Ewing</u>, supra, at p. 23, quoting <u>Harmelin</u>, supra, at p. 1001.)

Objective factors guiding the proportionality analysis include "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (<u>Solem v. Helm</u> (1983) 463 U.S. 277, 292.) But only in the rare case where the first factor is satisfied does a reviewing court consider the other two factors. (<u>Harmelin</u>, supra, 501 U.S. at p. 1005 (conc. opn. of Kennedy, J.).)

The United States Supreme Court rejected an Eighth Amendment challenge to a 25-year-to-life three strikes sentence in <u>Ewing</u>, supra, 538 U.S. 11, noting that recidivism has traditionally been recognized as a proper ground for increased punishment. (<u>Id.</u> at p. 25.) Given the

1   defendant's long criminal history, the court held that the defendant's
2   punishment was not disproportionate despite the relatively minor character
    of his current felony. (Id. at p. 29.)

3       Likewise here, [Petitioner]'s criminality began in 1977 and was
4   relatively consistent thereafter, interrupted on occasion by periods of
    incarceration and probation. What began with voluntary manslaughter
5   spanned the next 30 years with several serious and/or violent felonies and
    violations of probation and parole. While it is true [Petitioner]'s current
6   offense is "nonviolent" as he suggests (although he was arrested with a
    razor blade on his person), he was well aware of the fact that he was
7   under the restrictions of the three strikes law when he committed the
    current offense, as he had been given a recent "break" in 2003 when he
8   was given probation for a felony conviction. His punishment was not
    grossly disproportionate in light of his long criminal record. (See People v.
9   Poslof (2005) 126 Cal.App.4th 92, 109; People v. Meeks (2004) 123
    Cal.App.4th 695, 706-710.)

10      Similarly, article I, section 17 of the California Constitution
    proscribes "[c]ruel or unusual punishment." Although this language is
11  construed separately from the federal constitutional ban on cruel and
    unusual punishment (Carmony, supra, 127 Cal.App.4th at p. 1085), the
12  method of analysis is similar: the reviewing court considers "the nature of
    the offense and/or the offender, with particular regard to the degree of
13  danger both present to society"; the comparison of "the challenged penalty
    with the punishments prescribed in the same jurisdiction for different
14  offenses"; and the comparison of "the challenged penalty with the
    punishments prescribed for the same offense in other jurisdictions …." (In
15  re Lynch (1972) 8 Cal.3d 410, 425-427.) The purpose of this analysis is to
    determine whether the punishment is "so disproportionate to the crime for
16  which it is inflicted that it shocks the conscience and offends fundamental
    notions of human dignity." (Id. at p. 424, fn. omitted.)

17      This is not one of those rare cases in which the sentence is so
18  disproportionately harsh as to shock the conscience or offend fundamental
    notions of human dignity. (See People v. Kinsey (1995) 40 Cal.App.4th
19  1621, 1631.) As previously discussed in this opinion, [Petitioner]'s past
    and present offenses are grave. His punishment is not disproportionate to
20  that imposed on other recidivists under the three strikes law, including
    those whose present offense, like [Petitioner]'s, is not a "serious" or
21  "violent" felony under that law. (See, e.g., People v. Poslof, supra, 126
    Cal.App.4th at p. 109; People v. Meeks, supra, 123 Cal.App.4th at pp.
22  706-710.)

23      [Petitioner] cites numerous cases in support of his argument that
    the punishment in other states for "more serious" crimes committed in
24  California shows his sentence is grossly disproportionate. Those
    arguments are unpersuasive. The interjurisdictional test does not require
25  proof that California's sentencing scheme as to recidivists is less harsh
    than others. (People v. Martinez (1999) 71 Cal.App.4th 1502, 1516.)

26      [Petitioner] has not shown that his punishment was cruel and
27  unusual under the federal Constitution, or cruel or unusual under the
    California Constitution.

28  People v. Pena, 2010 Cal. App. Unpub. LEXIS 7863 at 9-16.

1          2.    Analysis

2          The Supreme Court has held, in the context of AEDPA review of a California

3    Three Strikes Law sentence, that the relevant, clearly established law regarding the

4    Eighth Amendment's proscription against cruel and unusual punishment is a "gross

5    disproportionality" principle, the precise contours of which are unclear and applicable

6    only in the "exceedingly rare" and "extreme" case. Lockyer v. Andrade, 538 U.S. 63, 73-

7    76 (2003) (discussing decisions in Harmelin v. Michigan, 501 U.S. 957 (1991), Solem v.

8    Helm, 463 U.S. 277 (1983), and Rummel v. Estelle, 445 U.S. 263 (1980)); Ewing v.

9    California, 538 U.S. 11, 23 (2003). "Successful challenges to the proportionality of

10   particular sentences will be exceedingly rare." Solem, 463 U.S. at 289-90.

11         Generally, the Supreme Court has upheld prison sentences challenged as cruel

12   and unusual, and in particular, has approved recidivist punishments similar to or longer

13   than Petitioner's 25 years to life sentence, for offenses of equivalent or lesser severity.

14   See Andrade, 538 U.S. at 77 (denying habeas relief on Eighth Amendment

15   disproportionality challenge to Three Strikes sentence of two consecutive terms of 25

16   years to life for stealing $150.00 in videotapes when petitioner had a lengthy but

17   nonviolent criminal history); Harmelin, 501 U.S. at 1008-09 (mandatory life sentence

18   without parole for first offense of possession of more than 650 grams of cocaine is not so

19   disproportionate as to violate the Eighth Amendment); Hutto v. Davis, 454 U.S. 370, 374-

20   75 (1982) (per curiam) (upholding non-recidivist sentence of two consecutive 25 prison

21   terms for possession of nine ounces of marijuana and distribution of marijuana); cf.

22   Solem, 463 U.S. at 280-81 (sentence of life imprisonment without possibility of parole for

23   seventh nonviolent felony violates Eighth Amendment).

24         Moreover, in cases arising on habeas review following the Supreme Court's

25   decisions in Andrade and Ewing, the Ninth Circuit has frequently rejected Eighth

26   Amendment challenges to California's Three Strikes Law sentences. See, e.g., Nunes v.

27   Ramirez-Palmer, 485 F.3d 432, 439 (9th Cir. 2007) (sentence of 25 years to life for crime

28   of petty theft with a prior did not offend the Constitution where petitioner had extensive

14

and serious felony record); Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (no Eighth Amendment violation where petitioner with prior offenses involving violence was sentenced to 25 years to life for possession of .036 grams of cocaine base); Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (sentence of 25 years to life for offense of petty theft with a prior imposed on petitioner with two prior robbery convictions was not objectively unreasonable); cf. Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004) (finding that habeas relief was warranted in "exceedingly rare" case where petitioner with minimal criminal history and no prior state prison sentence received a Three Strikes sentence for offense of petty theft with a prior); Gonzalez v. Duncan, 551 F.3d 875 (9th Cir. 2008) (life sentence under California's Three Strikes law, triggered by a failure to register as a sex offender, violated the Eighth Amendment proscription against cruel and unusual punishment because there was no "rational relationship" between a failure to register and the probability defendant would recidivate as a violent criminal or sex offender).

Here, Petitioner was sentenced to 25 years to life in prison for petty theft, and a finding that he had previously suffered at least five prior serious felony convictions voluntary manslaughter, three robberies, two of which while armed, and attempted robbery. Pena, 2010 Cal. App. Unpub. LEXIS 7863 at 9-16. First, Petitioner's sentence was less than that of the defendants in Andrade and Harmelin, and allows for the possibility of parole unlike in Solem. See Andrade, 538 U.S. at 74; Taylor, 460 F.3d at 1098 (eligibility for parole, albeit after 25 years, made California Three Strikes sentence "considerably less severe than the one invalidated in Solem"). Second, Petitioner's triggering offense of petty theft with a prior of a $150 MP3 player was at least as serious as the petty thefts with a prior involved in Ewing, Andrade, Nunes, and Rios. Third, Petitioner sustained five prior serious felony convictions as compared to Taylor's two prior serious or violent felonies. Id. at 1098. Thus, Petitioner's criminal history was similar to or more serious than the criminal histories considered by the Supreme Court in approving the recidivist sentences at issue in Andrade (three burglaries) and Ewing

1   (three burglaries and one robbery).

2         For all of the above reasons, and in light of controlling jurisprudence, this Court

3   cannot find that Petitioner's sentence is grossly disproportionate to his commitment

4   offense. Thus, the state court's rejection of this claim was not contrary to or an

5   unreasonable application of federal law. Accordingly, Petitioner's Eighth Amendment

6   claim should be rejected.

7   **V.    CONCLUSION**

8         Petitioner is not entitled to relief with regard to the claims presented in the instant

9   petition. The Court therefore orders that the petition be DENIED.

10  **IV.   CERTIFICATE OF APPEALABILITY**

11        A state prisoner seeking a writ of habeas corpus has no absolute entitlement to

12  appeal a district court's denial of his petition, and an appeal is only allowed in certain

13  circumstances.   Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling

14  statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253,

15  which provides as follows:

16        (a) In a habeas corpus proceeding or a proceeding under section 2255
17        before a district judge, the final order shall be subject to review, on appeal,
          by the court of appeals for the circuit in which the proceeding is held.

18        (b) There shall be no right of appeal from a final order in a proceeding to
          test the validity of a warrant to remove to another district or place for
19        commitment or trial a person charged with a criminal offense against the
          United States, or to test the validity of such person's detention pending
20        removal proceedings.

21        (c)    (1) Unless a circuit justice or judge issues a certificate of
          appealability, an appeal may not be taken to the court of appeals from–
22
                 (A)  the final order in a habeas corpus
23               proceeding in which the detention complained
                 of arises out of process issued by a State
24               court; or

25               (B)  the final order in a proceeding under
                 section 2255.
26
          (2) A certificate of appealability may issue under paragraph
27        (1) only if the applicant has made a substantial showing of
          the denial of a constitutional right.
28

16

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   June 21, 2013          /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE